**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHERYL ANN MILLER-BELL, | ) |
|               Plaintiff, | ) No. 2:23-cv-924-RJC ) ) |
| vs. | ) Judge Robert J. Colville ) |
| SARA HALL, *et al.*, | ) ) |
|               Defendants. | ) |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge.

      Plaintiff Cheryl Ann Miller-Bell seeks leave to proceed *in forma pauperis* to pursue various claims related to her housing against fifteen individuals, some named and others denominated as John or Jane Doe. The Court will grant her leave to proceed *in forma pauperis*. However, because her complaint, even construed liberally in her favor, fails to state a plausible claim on which relief can be granted, the Court will dismiss her complaint.

**I.      INTRODUCTION AND FACTUAL BACKGROUND**

      There are currently three separate motions to proceed *in forma pauperis* pending on the docket. *See* Mots. to Proceed *in Forma Pauperis* (ECF Nos. 1, 3, 5). Ms. Miller-Bell has also filed motions for a temporary restraining order and for a hearing, also pending. Mot. for Temporary Restraining Order (ECF No. 6); Mot. for Hearing on Mot. for Temporary Restraining Order (ECF No. 4).

      On June 14, after an initial review of Ms. Miller-Bell's filings, the Court issued an order to show cause why the action should not be dismissed for lack of subject-matter jurisdiction. Order to Show Cause (ECF No. 7). Ms. Miller-Bell requested an extension of her time to respond, which the Court granted. Mot. to Extend Time to Comply with Order to Show Cause (ECF No. 8); Order

(ECF No. 9). On July 10, in response to the order to show cause, Ms. Miller-Bell filed a motion to supplement and correct her court-supplied civil rights complaint. Mot. to Supplement (ECF No. 10).

Many of Ms. Miller-Bell's filings include lengthy attachments which purport to detail the facts underlying her claims. It is not always clear, from the face of these filings, how the different events and other facts they describe are connected. Nonetheless, the Court has reviewed all the filings in this case, including Ms. Miller-Bell's hand-written complaint. *See* Compl. (ECF No. 3-2). Based on this review, the Court believes the alleged facts, which the Court assumes to be true for purposes of its analysis under Section 1915(e)(2)(B), to be largely as follows: Ms. Miller-Bell and her husband reside at 2926 Merwyn Avenue in Pittsburgh. Their landlord is defendant Michael Gestrich. However, Ms. Miller-Bell and her husband do not pay Mr. Gestrich directly. Instead, they are part of a University of Pittsburgh Medical Center program, which Ms. Miller-Bell calls Neighborhood Living Families, that makes rent and utilities payments to Mr. Gestrich directly.

Beginning in 2015, the "Bridging the Gap Program" administered by Mercy Behavioral Health made rent and utilities payments to Mr. Gestrich on behalf of Ms. Miller-Bell and her husband. In 2021, Ms. Miller-Bell was informed that program was shut down and the Allegheny County Department of Human Services contracted with a different service provider. By July 2021, the services that Ms. Miller-Bell and her husband were receiving from the Bridging the Gap program were taken over by UPMC.

Ms. Miller-Bell's complaints appear to have their roots in the transfer of services to UPMC. Ms. Miller-Bell alleges that one of the administrators of the UPMC program is Sara Hall, one of the named defendants in this case. Ms. Miller-Bell and Ms. Hall appear to have a long-standing personal conflict arising from a physical altercation that occurred between them in 2008 or 2009,

ultimately resulting in Ms. Hall losing her job, further details of which are not particularly relevant to this dispute.

According to Ms. Miller-Bell, Ms. Hall was part of a small group of UPMC members who met with her and her husband to evaluate them for the UPMC program in September 2021. Shortly after they arrived at Ms. Miller-Bell's home, Ms. Hall allegedly told Ms. Bell that Ms. Hall would pay her back in spades for the 2008-2009 incident. Ms. Hall then allegedly drove away.

Around November 2021, Mr. Gestrich allegedly called Ms. Miller-Bell's husband to tell him that he was filing for eviction against them because he had not received rent payments from UPMC. Ms. Miller-Bell's husband allegedly applied for rent and utility relief and obtained that assistance the same month. Additionally, Ms. Miller-Bell alleges that UPMC paid Mr. Gestrich $500 for water and sewage bills, presumably around the same time. Ms. Miller-Bell's husband applied for additional rental assistance, which was granted in April 2022.

In April 2022, Ms. Miller-Bell signed a lease with Mr. Gestrich and UPMC that expired in April 2023. Ms. Miller-Bell alleges that Ms. Hall withheld payments from UPMC to Mr. Gestrich because Mr. Gestrich had not signed the lease. She alleges that a copy of the lease lingered in Mr. Gestrich's office for months.

Ms. Miller-Bell alleges that, on January 6, 2023, Mr. Gestrich, Ms. Hall, and three John Does (John Does one, two, and five) came to 2926 Merwyn Ave. and destroyed portions of the home and some of Ms. Miller-Bell's personal property. She asserts that they did so to punish her and to render parts of her home unusable. As a result, she says that she cannot wash her clothes or bake in the oven, that the first-floor bathroom is inoperable, that she cannot take a shower, that she and her husband are exposed to raw sewage backups and sewage gasses, and that the damage created trip and fall hazards on the first floor of her rental home.

Ms. Miller-Bell also alleges that she and her husband have sought help with their housing situation from several public officials, including (among others) Pennsylvania Governor Josh Shapiro, Pittsburgh Mayor Edward Gainey, Pittsburgh City Council President Theresa Kail-Smith, UPMC Neighborhood Living Families Program Service Coordinator Nicholas Dimmino, the Pittsburgh Bureau of Police, and the Pennsylvania Public Utilities Commission.

In response to her communications with these individuals and others, Ms. Miller-Bell claims that she was subject to a number of retaliatory actions: (1) multiple defendants attempted to have her shot, assaulted, robbed, etc., threatened her with the same, and wiretapped her phones; (2) Mr. Gestrich filed an eviction action against her and her husband in state court; (3) in support of that eviction action, Mr. Gestrich claimed that she and her husband violated their lease by having a dog on the property even though he had verbally permitted her and her husband to have a dog at the property when they leased the house in 2015, 2019, and 2022; (4) Mr. Gestrich and another defendant took some action to prevent the Allegheny County Health Department from investigating dangerous conditions at 2925 Merwyn Ave.; (5) Mr. Gestrich failed to address mold and sewage issues at 2926 Merwyn Ave.; and (6) some unidentified defendants, including Mr. Gestrich, refused to repair damages to 2926 Merwyn Ave. on January 6, 2023.

Regarding her finances, Ms. Miller-Bell alleges that she receives $685.50 in gross wages per month, although she does not specify her net wages. She receives $214.50 per month in Supplemental Nutrition Assistance Program benefits and $16.33 per month in additional benefits. She has $0.77 in her checking or savings account. She does not own anything else of value, including real estate or an automobile. She has no dependents. She lists electric, gas, water, sewage, cell phone, and internet bills as her only debts.

Initially, the Court finds that Ms. Miller-Bell may proceed *in forma pauperis* under 28 U.S.C. § 1915(a). Accordingly, the pending motion to proceed *in forma pauperis* will be granted. However, because Ms. Miller-Bell has been granted leave to proceed *in forma pauperis* her allegations must be reviewed under 28 U.S.C. § 1915(e).

## II.     LEGAL STANDARDS

Section 1915(e)(2), as amended, requires federal district courts to review complaints filed by persons[1] who are proceeding *in forma pauperis* and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). "[A] complaint . . . is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hawkins v. Coleman Hall, C.C.F.*, No. 11-3467, 2011 WL 5970977, at *2 (3d Cir. Nov. 30, 2011) ("An appeal is frivolous when it lacks an arguable basis either in law or fact." (citing *Neitzke, supra*)). Thus, under §1915(e)(2)(B), courts are "authorized to dismiss a claim as frivolous where 'it is based on an indisputable meritless legal theory or where the factual contentions are clearly baseless.'" *O'Neal v. Remus*, No. 09-14661, 2010 WL 1463011,

---

[1] Although the Third Circuit has not ruled on the issue, several district courts in the Third Circuit have considered whether this revised *in forma pauperis* statute applies only to prisoners and have concluded that it does not. *Leatherman v. Obama*, C.A. No. 12-1486, 2012 WL 5398912 (W.D. Pa. 2012) (Fisher, J.), *adopting R&R* 2012 WL 5398856 (W.D. Pa. Oct. 22, 2012); *Harrison v. Shapiro*, No, 97–2133, 1997 WL 197950, at *1 (E.D. Pa. 1997); *Jones v. North Atlantic Treaty Organization*, No. 98–1185, 1998 WL 136511, at *1 n.1 (E.D. Pa. 1998); *McAllen v. Attic Away From Home*, No. 00–941, 2000 WL 1752618, at *2 n.7 (D. Del. 2000). Each of these courts has found the mention of the word "prisoner" to be a typographical error, and that the Congress meant the statute to read "person." The Court finds this reasoning to be persuasive. *See also, Anyanwutaku v. Moore*, 151 F.3d 1053 (D.C. Cir. 1998); *Mitchell v. Farcass,* 112 F.3d 1483, 1484 (11th Cir.1997); *Powell v. Hoover*, 956 F. Supp. 564, 568 (M.D. Pa. 1997).

at *1 (E.D. Mich. Mar. 17, 2010) (quoting *Price v. Heyrman*, No. 06-C-632, 2007 WL 188971, at *1 (E.D. Wis. Jan. 22, 2007) (citing *Neitzke*, 490 U.S. at 327)).[2]

In determining whether a complaint must be dismissed under Section 1915(e)(2)(B) because it fails to state a claim upon which relief may be granted, courts apply the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *D'Agostino v. CECOM RDEC*, 436 F. App'x 70, 72 (3d Cir. 2011) (citing *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)). A complaint must be dismissed under Rule 12(b)(6)—and, therefore, also under Section 1915(e)(2)(B)—if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

The Third Circuit has expounded on this standard considering its decision in *Phillips v. County of Allegheny,* 515 F.3d 224 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and the Supreme Court's decision in *Iqbal*:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 1949-50; *see also Twombly,* 505 U.S. at 555, & n. 3.

---

[2] Dismissal under Section 1915(e)(2) is "often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering [frivolous] complaints[,]" *Neitzke,* 490 U.S. at 324, or complaints which fail to state a claim on which relief may be granted.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  In making this determination, the court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff.  *Angelastro v. Prudential-Bache Sec., Inc*., 764 F.2d 939, 944 (3d Cir. 1985).  "To the extent that a complaint filed *in forma pauperis* which fails to state a claim lacks even an arguable basis in law, Rule 12(b)(6) and § 1915([e]) both counsel dismissal."  *Neitzke,* 490 U.S. at 328 (footnote omitted).

Because Ms. Miller-Bell is proceeding *pro se*, the Court must liberally construe the factual allegations of the complaint.  *Pro se* pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erikson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation omitted); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  In addition, the court should "'apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name.'"  *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veterans Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999)).  However, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim."  *Mala v Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

III. DISCUSSION

Ms. Miller-Bell purports to bring her claims under three civil rights statutes, 42 U.S.C. §§ 1981, 1983, and 1988, and various federal constitutional provisions.  She also cites the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*  In addition, among several federal criminal statutes, Ms. Miller-Bell cites the Racketeering in Corrupt Organizations Act, 18 U.S.C. §§ 1961, 1962.

Ms. Miller-Bell's complaint most clearly asserts a first-amendment retaliation claim under the civil rights statutes and the federal constitution.  Ms. Miller-Bell also appears to assert claims

under the ADA, RICO, and several criminal statutes. The Court first addresses Ms. Miller-Bell's retaliation claim and then moves through the remaining claims.

### A. First Amendment Retaliation Claims

The Court begins with the First Amendment retaliation claims. Ms. Miller-Bell has not pleaded state action or causation, required elements of such a claim. Her First Amendment retaliation claim must therefore by dismissed.

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). Plaintiffs may bring claims for retaliation for the exercise of First Amendment rights under Section 1983. *See Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (setting out the elements of a First Amendment retaliation claim under Section 1983).

"To plead a plausible First Amendment retaliation claim," a plaintiff must "allege three elements: (1) '[she engaged in] constitutionally protected conduct, (2) [there was] retaliatory action sufficient to deter a person of ordinary firmness from exercising [her] constitutional rights, and (3) [there was] a causal link between the constitutionally protected conduct and the retaliatory action." *Condard v. Pa. State. Police*, 902 F.3d 178, 183 (3d Cir. 2018) (quoting *Mirabella v. Villard*, 853 F3d 641, 649 (3d Cir. 2017)) (alterations in original). "In addition to the above elements, a First Amendment claim requires the conduct complained of to constitute 'state action,' which satisfies the requirement under § 1983 that the defendant act under color of state law." *Campbell v. Pa. Sch. Bds. Ass'n*, 336 F. Supp. 3d 482, 494 (E.D. Pa. 2018) (citing *Brentwood Acad. v. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 295 n.2 (2001)).

First, Ms. Miller-Bell has not plead that any of the retaliatory acts she alleges was state action. "[S]tate action may be found if, though only if, there is such a 'close nexus between the

State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad.*, 531 U.S. at 295. The Supreme Court has identified several facts which, if present, may inform whether private action may be attributed to the state, including whether the state coerced the private action, whether it provided "significant encouragement," or whether the private actor "operates as a willful participant in joint activity with the State or its agents." *Benn v. Univ. Health Sys., Inc.*, 371 F3d 165, 171–72 (3d Cir. 2004) (quotation marks and citations omitted).

Here, though Ms. Miller-Bell has identified many different alleged retaliatory acts, each appears to have been private conduct, and none can be fairly treated as action by the state. She alleges no facts giving rise to an inference of coercion or encouragement by the state. Nor does she allege that the government was involved in any way in any of the retaliatory acts identified. Some of the alleged retaliatory acts might very well independently constitute torts under state law but that does not mean that they are attributable to the state.

Second, Ms. Miller-Bell has not plead that any alleged retaliatory action was caused by her protected activity. A plaintiff "must plead 'but-for' causation between her constitutionally protected conduct and the retaliation." *Starnes v. Butler Cty. Ct. of Common Pleas, 50th Jud. Dist.*, 971 F.3d 416, 430 (3d Cir. 2020). "Causation 'may be inferred—especially at the pleading stage—when the retaliatory act follows close on the heels of the protected activity.'" *Beaulieu v. Barr*, No. 15-896 (TJK), 2019 WL 5579968, at *5 (D.D.C. Oct. 29, 2019) (quoting *Smith v. De Novo Legal, LLC*, 905 F. Supp. 2d 99, 104 (D.D.C. 2012)). Ms. Miller-Bell alleges that she contacted various government officials seeking their help with her housing situation. But she does not say when she contacted any of those officials, so she cannot show that the alleged retaliatory acts followed "close on the heels" of her protected communications. Nor does she explain how her

9

contact with those individuals connects to any of the various forms of retaliation that she says she has experienced. Without facts from which to infer causation, the Court must dismiss her claim.

### B.   Race Discrimination Claim

Ms. Miller-Bell also asserts a claim under 42 U.S.C. § 1981. Under section 1981,

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. Section 1981 includes several different clauses, but only the "full and equal benefit" clause appears to apply here. However, to state a claim under that clause, a plaintiff must show that she has suffered from some state action. *See Mahone v. Waddle*, 564 F.2d 1018, 1029 (3d Cir. 1977) ("The words 'full and equal benefit of all laws and proceedings for the security of persons and property' (emphasis supplied), on the other hand, suggest a concern with relations between the individual and the state, not between two individuals."); *Brown v. Philip Morris Inc.*, 250 F.3d 789, 799 (3d Cir. 2001) ("Moreover, even if we were to consider them, such 'full and equal benefit' claims would fail in light of a substantial line of authority holding that only state actors can be sued under the 'full and equal benefit' clause of § 1981."). Because, as discussed, Ms. Miller-Bell has not plead state action here, her claim under section 1981's "full and equal benefit" clause must be dismissed.

### C.   Disability Discrimination Claims

The Court next addresses Ms. Miller-Bell's claim under the Americans with Disabilities Act. That claim fails because Ms. Miller-Bell has failed to plead that she is a qualified individual with a disability or that she was denied any public benefit. Broadly speaking, the ADA covers at least three different forms of disability discrimination. *See* 42 U.S.C. § 12112 (employment); 42

10

U.S.C. § 12132 (public services); 42 U.S.C. §§ 12182–12184 (public accommodations). Discrimination in public services fits most closely with the facts alleged in Ms. Miller-Bell's complaint, so the Court uses that framework to analyze her claim. However, her claim would fail under any of the ADA's anti-discrimination provisions because Ms. Miller-Bell fails to plead that she is a person with a disability, as each of those provisions requires.

Title II of the ADA prohibits discrimination in public benefits. "To state a claim under Title II of the ADA, [a plaintiff] must establish: '(1) [s]he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of [her] disability.'" *Geness v. Cox*, 902 F.3d 344, 361 (3d Cir. 2018) (quoting *Haberle v. Troxell*, 885 F.3d 170, 178–79 (3d Cir. 2018)).

Here, Ms. Miller-Bell has not pleaded any facts tending to show that she is a qualified individual with a disability. Nor has she pleaded that she was excluded from participation in or denied the benefits of any public service, program, or activity of a public entity or otherwise subjected to discrimination by any such entity. Finally, even assuming that some act in her complaint could be construed as discrimination by a public entity, Ms. Miller-Bell has alleged nothing showing that that discrimination was by reason of her disability.

### D. Racketeering Claims

Next, the Court considers Ms. Miller-Bell's claim under RICO. That claim must be dismissed because she fails to plead the existence of an enterprise or a pattern of racketeering activity. Like the ADA, RICO provides several different causes of action. *See* 18 U.S.C. § 1962(a)–(d). Because it fits best, the Court will analyze Ms. Miller-Bell's claim under 18 U.S.C. § 1962(c).

"To state a claim under section 1962(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *McLaughlin v. Int'l Brotherhood of Teamsters, Local 249*, — F. Supp. 3d —, 2022 WL 20212033, at *11 (W.D. Pa. Sept. 6, 2022) (quoting *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010)). An "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A "pattern of racketeering activity" requires "at least two acts of racketeering activity" during a ten-year period. 18 U.S.C. § 1961(5). "Racketeering activity" is itself defined by a long list of conduct "chargeable" under several generic state law categories or "indictable" under various federal criminal statutes. *See* 18 U.S.C. § 1961(1). To avoid dismissal, a plaintiff alleging a claim under Section 1962(c) must allege both "the elements enumerated within RICO" and also "all elements of the predicate act crimes" that constitute the racketeering activity. *Lester v. Percurdani*, 556 F. Supp. 2d 473, 481 (M.D. Pa. 2008).

Here, Ms. Miller-Bell has alleged neither an enterprise nor a pattern of any racketeering activity. While an enterprise may be comprised of a "group of individuals associated in fact," 18 U.S.C. § 1961(4), it is not sufficient to merely allege claims against multiple defendants and call them an enterprise. An association-in-fact enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). While a plaintiff need not prove her claims at the pleading stage, the existence of such an enterprise must be plausible based on the facts alleged. But Ms. Miller-Bell has pleaded no facts supporting an inference that such a RICO enterprise existed.

More to the point, Ms. Miller-Bell has not alleged any conduct that is chargeable or indictable under any of the various statutes that constitutes "racketeering activity." She has alleged various actions that might be considered tortious under state law. But she has made no attempt to plead the elements of any predicate act crime either chargeable under state law or indictable under federal statutes. These pleading deficiencies are fatal to her RICO claims.

### E.   Claims Under Criminal Statutes

Finally, Ms. Miller-Bell cites three criminal statutes, 18 U.S.C. §§ 241, 242, and 371. Those statutes respectively prohibit conspiracies against constitutional rights, the deprivation of rights under color of law, and conspiracies to commit offenses against or to defraud the United States. However, there is no private right of action under these criminal statutes. *See Rockefeller v. U.S. Ct. of App. Office for Tenth Circuit Judges*, 248 F. Supp. 2d 17, 23 (D.D.C. 2003) (dismissing claims under 18 U.S.C. §§ 242 and 371 because those statutes do not create a private right of action); *Fiorino v. Turner*, 476 F. Supp. 962, 963 (D. Mass. 1979) (dismissing claims under 18 U.S.C. §§ 241, 242, 371, and 1001 because those statutes do not create a private right of action). Accordingly, her claims under these statutes must be dismissed.

### F.   Leave to Amend

Courts generally grant leave to amend unless amendment of the complaint would be inequitable or futile. *See, e.g., Bachtell v. Gen. Mills, Inc.*, 422 F. Supp. 3d 900, 915 (M.D. Pa. 2019) (citing *Phillips v. Allegheny Cty.*, 515 F.3d 224, 245 (3d Cir. 2008)). Here, leave to amend will not be inequitable or futile, except with respect to Ms. Miller-Bell's claims under various criminal statutes. Those statutes, as discussed, do not create a private right of action. The Court will permit Ms. Miller-Bell to amend her complaint within thirty days to correct the deficiencies identified, except with respect to her claims under criminal statutes, which will be dismissed with prejudice.

**IV.     CONCLUSION**

As discussed above, the Court will: (1) grant Ms. Miller-Bell's motions to proceed *in forma pauperis*; (2) dismiss Ms. Miller-Bell's claims without prejudice—except for her claims under various criminal statutes which are dismissed with prejudice—for failure to state a cognizable legal claim; and (3) dismiss the pending motions for a temporary restraining order and for a hearing as moot.  The Court will grant Ms. Miller-Bell leave to amend her complaint within thirty days of the date it issues its order dismissing her complaint.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: August 9, 2023
cc: All counsel of record